204 P.3d 916 (2009)
STATE of Washington, Petitioner,
v.
Randy J. SUTHERBY, Respondent.
No. 80169-0.
Supreme Court of Washington, En Banc.
Argued June 12, 2008.
Decided April 9, 2009.
*918 Gerald R. Fuller, Grays Harbor Co. Pros. Office, Attorney at Law, Montesano, WA, for Petitioner.
James Elliot Lobsenz, Carney Badley Spellman, Seattle, WA, for Respondent.
STEPHENS, J.
¶ 1 A jury convicted Randy Sutherby of first degree child rape, first degree child molestation, and 10 counts of possession of depictions of minors engaged in sexually explicit conduct, also known as child pornography. At sentencing, the trial court consolidated five of the child pornography counts into two counts, on the ground that the proper unit of prosecution was per minor depicted, and some of the counts related to different images of the same minor. Sutherby appealed, arguing that he should be sentenced on only one count of possession of child pornography and that his attorney was ineffective in failing to seek a severance of the child rape and molestation charges from the child pornography charges. Sutherby subsequently filed a personal restraint petition raising the same claims of ineffective assistance of counsel, which the Court of Appeals consolidated with the appeal.
¶ 2 The Court of Appeals agreed with Sutherby that he should have been charged with only one count of possession of child pornography and held it was reversible error to allow the mother's testimony. The court ordered a new trial on the child rape and child molestation charges and remanded for resentencing on one count of possession of child pornography. The Court of Appeals did not address the severance issue.
¶ 3 We affirm the Court of Appeals, though in part on different grounds. We agree that the proper unit of prosecution is one for Sutherby's possession of child pornography and remand for resentencing on a single count. We further hold that it was ineffective assistance of counsel for Sutherby's trial attorney to fail to move for a severance. Accordingly, we reverse the convictions for child rape and child molestation and remand for a new trial.

FACTS AND PROCEDURAL HISTORY
¶ 4 The State offered the following facts at trial. On December 20, 2004, five year old "L.K." stayed with her paternal grandfather, Randy Sutherby, and his wife in Grays Harbor for two nights. On December 27, L.K. told her mother that on the second night she stayed at Sutherby's, he crawled into her bed, got under the blankets, and poked his finger into her vagina. L.K.'s mother immediately took L.K. to the doctor's office, where the doctor found injuries that were consistent with L.K.'s description of the events, though the doctor noted the possibility of other causes of L.K.'s injuries. Soon after, L.K.'s mother contacted child protective services and L.K. recounted the same events to an interviewer for the Benton County Prosecuting Attorney's Office. Two weeks after the alleged assault, another healthcare professional examined L.K., but the results were inconclusive.
¶ 5 On March 2, 2005, Sutherby was arrested at his home. Sutherby waived his Miranda[1] rights and answered questions about the incident, denying any wrongdoing. With Sutherby's consent, officers seized and searched two personal computers from his home. Investigators found several files containing pictures of children engaged in sexually explicit conduct. Upon further questioning, Sutherby admitted that he looked at child pornography and had sexual fantasies about children, but said he never acted on those fantasies.
¶ 6 By amended information, Sutherby was charged with one count of first degree rape of a child, one count of first degree child molestation, and 10 counts of possession of depictions of minors engaged in sexually explicit conduct. At one point in the pretrial proceedings, the trial court inquired about the possibility of severing the two types of charges. The State argued that the counts *919 were "intertwined" because proof that Sutherby viewed child pornography was probative of his sexual motivation in touching L.K. Report of Proceedings (RP) (June 6, 2005) at 153. Sutherby's attorney never moved for a severance.
¶ 7 At trial, L.K.'s mother testified without objection that she could tell when L.K. was lying because she "tries not to smile, but makes a half smile." RP (Nov. 1, 2005) at 34. She said L.K. did not smile when she talked about the incident involving Sutherby. During closing arguments, the prosecutor argued that Sutherby's possession of the pornographic material proved that he molested his granddaughter, stating that the child pornography "shows his motive; why he touched [L.K.] It shows his intent. He is a predator that went over the line and we are here to hold him responsible today." RP (Nov. 3, 2005) at 398.
¶ 8 The jury convicted Sutherby on all counts. At sentencing, the trial court determined that the unit of prosecution for possession of child pornography was per minor depicted. Accordingly, the judge combined the counts representing images of the same minor and those he could not clearly identify as depicting different minors, and sentenced Sutherby on seven counts of possession of child pornography. The trial court rejected defense counsel's argument that Blakely[2] required a jury to determine the number of minors depicted in the images.
¶ 9 Sutherby appealed, arguing that (1) his attorney's failure to move for a severance constituted ineffective assistance of counsel, (2) it was manifest constitutional error to allow testimony from the mother that her daughter was telling the truth about the rape, (3) his attorney's failure to object to the impermissible testimony constituted ineffective assistance of counsel, (4) the proper unit of prosecution on the possession charge is one count per possession, and (5) the trial judge violated Blakely by making factual findings as to which minors were depicted in each image in order to determine the unit of prosecution. Sutherby subsequently filed a personal restraint petition (PRP) raising the same claims of ineffective assistance of counsel, which the Court of Appeals consolidated with the appeal.
¶ 10 The Court of Appeals reversed Sutherby's convictions for child rape and child molestation, and remanded for retrial on those charges and resentencing on a single count of possession of child pornography. State v. Sutherby, 138 Wash.App. 609, 618, 158 P.3d 91 (2007). We granted review. State v. Sutherby, 162 Wash.2d 1018, 178 P.3d 1034 (2008).

ANALYSIS
¶ 11 Two issues are dispositive of this appeal: (1) what is the proper unit of prosecution for possession of child pornography under former RCW 9.68A.070 (1990), and (2) did Sutherby receive ineffective assistance of counsel due to his trial attorney's failure to seek a severance of the child rape and molestation charges from the possession of child pornography charges? Because these issues can be resolved on Sutherby's direct appeal, it is unnecessary to reach his PRP.[3]

Unit of Prosecution
¶ 12 Sutherby maintains that he should be sentenced on only one count of possession of child pornography, as the unit of prosecution is per possession, not per image or per minor. With respect to determining the proper unit of prosecution, our review is de novo. State v. Ose, 156 Wash.2d 140, 144, 124 P.3d 635 (2005) (citing State v. Graham, 153 Wash.2d 400, 404, 103 P.3d 1238 (2005)).
¶ 13 The Fifth Amendment to the United States Constitution and article I, section 9 of the Washington State Constitution protect a defendant from being punished more than once for the same offense. See State v. Gocken, 127 Wash.2d 95, 100, 896 *920 P.2d 1267 (1995). Both double jeopardy clauses prohibit multiple convictions under the same statute if the defendant commits only one unit of the crime. Ose, 156 Wash.2d at 144, 124 P.3d 635 (quoting State v. Tvedt, 153 Wash.2d 705, 710, 107 P.3d 728 (2005)). We have previously noted that the state constitutional rule against double jeopardy provides the same scope of protection as the federal constitutional rule. Gocken, 127 Wash.2d at 107, 896 P.2d 1267.
¶ 14 Ultimately, analyzing the unit of prosecution is an issue of statutory construction and legislative intent. State v. Adel, 136 Wash.2d 629, 634, 965 P.2d 1072 (1998). To determine legislative intent, we look to the plain meaning of the applicable statute, which is derived from the language of the statute. State v. Westling, 145 Wash.2d 607, 610, 40 P.3d 669 (2002). We construe statutes to effect their purpose and avoid unlikely or absurd results. State v. Neher, 112 Wash.2d 347, 351, 771 P.2d 330 (1989). If a statute does not clearly and unambiguously identify the unit of prosecution, then we resolve any ambiguity under the rule of lenity to avoid "`turning a single transaction into multiple offenses.'" Adel, 136 Wash.2d at 634-35, 965 P.2d 1072 (quoting Bell v. United States, 349 U.S. 81, 84, 75 S.Ct. 620, 99 L.Ed. 905 (1955)).
¶ 15 The first question is what act or course of conduct has the legislature proscribed? State v. Root, 141 Wash.2d 701, 706, 9 P.3d 214 (2000); Adel, 136 Wash.2d at 634, 965 P.2d 1072. Former RCW 9.68A.070 provided: "[a] person who knowingly possesses visual or printed matter depicting a minor engaged in sexually explicit conduct is guilty of a class C felony." From the text of the statute it is clear that the proscribed conduct is the possession of child pornography. The statute's structure is similar to the Mann Act, 18 U.S.C. § 2421 (1949), at issue in Bell, which stated: "`Whoever knowingly transports ... any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose ... [s]hall be fined not more than $5,000 or imprisoned not more than five years, or both.'" Bell, 349 U.S. at 82, 75 S.Ct. 620 (second alteration in original) (quoting 18 U.S.C. § 2421). In Bell, the United States Supreme Court held that the Fifth Amendment double jeopardy clause allowed only a single conviction for transporting, regardless of the number of women transported at the same time. Id. at 82-83, 75 S.Ct. 620.
¶ 16 The textual similarity to the Mann Act is not conclusive evidence of the intended unit of prosecution, however, because "[v]isual or printed matter" for purposes of former RCW 9.68A.070 is further defined as "any photograph or other material that contains a reproduction of a photograph." Former RCW 9.68A.011(2) (2002). Sutherby notes that "matter" is ordinarily considered a collective noun. It is defined as a "material substance of a particular kind or for a particular purpose." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1394 (2002). Based on this definition, Sutherby argues that possession of any amount of that "particular kind" (the child pornography) is one offense. In response, the State focuses on the definition of "visual or printed matter" as "any photograph or other material." According to the State, "any" is plainly singular and requires that each separate photograph or image be a separate unit of prosecution. Sutherby counters that "any" is collective and means everything, regardless of the quantity, just as under the Mann Act. See Bell, 349 U.S. at 83, 75 S.Ct. 620.
¶ 17 While the Court of Appeals recognized that the debate here centers on the definition of "any," it found no clear legislative intent as to the unit of prosecution. Sutherby, 138 Wash.App. at 615, 158 P.3d 91. The court noted that the word "any" has multiple, conflicting definitions, including (1) one; (2) one, some, or all regardless of quantity; (3) great, unmeasured, or unlimited in amount; (4) one or more; and (5) all. Id. at 614, 158 P.3d 91 (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 97 (1976)). Based on these definitions, the legislature could have intended to ban (1) one photograph or other material; (2) one, some, or all photographs or other material, regardless of quantity; or (3) one or more photographs or other material. Id. at 615, 158 P.3d 91. Because it concluded the statute is ambiguous, the Court of Appeals held that the rule *921 of lenity applies; therefore Sutherby's violation of the statute by possessing multiple offending materials at the same time in the same place is subject to only one conviction. Id.
¶ 18 We agree with the conclusion of the Court of Appeals that the proper unit of prosecution is one. This is consistent not only with the expansive dictionary definitions of "any" and the rule of lenity but also with our prior construction of the term "any" in other contexts.
¶ 19 In Rosenoff v. Cross, we analyzed the requirement that applications for shipments by druggists shall state "`that the applicant... ha[s] not been theretofore convicted of any violation of the laws relating to intoxicating liquor of the state of Washington.'" 95 Wash. 525, 527, 164 P. 236 (1917) (quoting 2 Rem.1915 Code & Stat. § 6262-17). We noted the words "theretofore" and "any" have broad and inclusive connotations; thus, we held that the provision includes violations of all laws, whether currently in effect or not. Id. at 528, 164 P. 236.
¶ 20 In State ex rel. Evans v. Brotherhood of Friends, we addressed the meaning of article II, section 24 of the Washington Constitution, which reads: "`[t]he legislature shall never authorize any lottery, or grant any divorce.'" 41 Wash.2d 133, 144, 247 P.2d 787 (1952) (quoting WASH. CONST. art. II, § 24). We held that the provision is unambiguously phrased in the broadest sense, and in that context the meaning of "any" is equivalent to "all" or "every." Id. at 145, 247 P.2d 787.
¶ 21 State v. Smith required us to interpret two statutes governing who may move for revision of a ruling by a juvenile court commissioner. 117 Wash.2d 263, 268-69, 814 P.2d 652 (1991). "`In any judicial district having a court commissioner, the court commissioner shall have the power, authority, and jurisdiction ... subject to motion or demand by any party within ten days from the entry of the order or judgment.'" Id. (quoting former RCW 13.04.021(1) (1979)). "`All of the acts and proceedings of court commissioners hereunder shall be subject to revision by the superior court. Any party in interest may have such revision upon demand made by written motion ... within ten days after the entry of any order or judgment of the court commissioner.'" Id. at 269, 814 P.2d 652 (quoting former RCW 2.24.050 (1971)). We held that the plain language of the statutes unambiguously entitled every party to move for revision. Id. at 271, 814 P.2d 652. We further stated that if the phrase "any party" was not sufficiently clear, Washington courts have repeatedly construed the word "any" to mean "every" or "all." Id. at 271 & n. 8, 814 P.2d 652.
¶ 22 Westling is particularly instructive. There, we interpreted the unit of prosecution for a statute prohibiting a person from "`knowingly and maliciously caus[ing] a fire or explosion which damages ... any ... automobile.'" 145 Wash.2d at 611, 40 P.3d 669 (quoting RCW 9A.48.030(1)). Citing to Smith, we held that "`any'" means "`every'" and "`all,'" and one conviction is appropriate where one fire damages multiple automobiles. Id. at 611-12, 40 P.3d 669.
¶ 23 Court of Appeals decisions are to the same effect. S.L. Rowland Construction Co. v. Beall Pipe & Tank Corp. involved interpreting a construction contract between two private parties in which the contractor "specifically waives claims for damages for any hindrance or delay." 14 Wash.App. 297, 305-06, 540 P.2d 912 (1975). Citing to Rosenoff and Evans, the Court of Appeals stated that the word "`any'" is a "broad and inclusive term with respect to subject matter." Id. at 306, 540 P.2d 912. The court held that the language was broad enough to encompass all delays, including those caused by a nonparty. Id. at 306-07, 540 P.2d 912.
¶ 24 In Jong Choon Lee v. Hamilton, the Court of Appeals analyzed a statute governing commitment and treatment of those acquitted of crimes by reason of insanity. 56 Wash.App. 880, 785 P.2d 1156 (1990). That statute stated that "`[w]henever any person has been committed under any provision of this chapter ... such commitment ... cannot exceed the maximum possible penal sentence for any offense charged for which he was acquitted by reason of insanity.'" Id. at 883-84, 785 P.2d 1156 (alterations in original) (emphasis omitted) (quoting former RCW *922 10.77.020(3) (1974)). The Court of Appeals held that commitment "`under any provision of this chapter'" included both pre- and postacquittal commitment because "`Washington courts have repeatedly construed the word "any" to mean "every" and "all."'" Id. at 884, 785 P.2d 1156 (quoting State v. Harris, 39 Wash.App. 460, 463, 693 P.2d 750 (1985)).
¶ 25 Given the context of the language used in the child pornography statute, and our repeated construction of "any" as including "every" and "all," we hold that the proper unit of prosecution under former RCW 9.68A.070 is one count per possession of child pornography, without regard to the number of images comprising such possession or the number of minors depicted in the images possessed.[4] We remand for resentencing of Sutherby on a single count of possession of child pornography.[5]

Counsel's Failure To Make a Severance Motion
¶ 26 Sutherby seeks reversal of his convictions for child rape and child molestation based on his trial attorney's failure to move for severance of the child pornography counts from these charges. A claim of ineffective assistance of counsel presents a mixed question of fact and law reviewed de novo.
¶ 27 To prevail on an ineffective assistance of counsel claim, the defendant must show that (1) defense counsel's representation was deficient in that it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defendant. State v. McFarland, 127 Wash.2d 322, 334-35, 899 P.2d 1251 (1995) (applying two-prong test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). We presume counsel is effective, and the defendant must show there was no legitimate strategic or tactical reason for counsel's action. Id. at 335, 899 P.2d 1251.
¶ 28 Severance of charges is important when there is a risk that the jury will use the evidence of one crime to infer the defendant's guilt for another crime or to infer a general criminal disposition. State v. Russell, 125 Wash.2d 24, 62-63, 882 P.2d 747 (1994) (citing State v. Watkins, 53 Wash.App. 264, 268, 766 P.2d 484 (1989)). The joinder of charges can be particularly prejudicial when the alleged crimes are sexual in nature. See State v. Saltarelli, 98 Wash.2d 358, 363, 655 P.2d 697 (1982). In this context there is a recognized danger of prejudice to the defendant even if the jury is properly instructed to consider the crimes separately. See State v. Harris, 36 Wash.App. 746, 750, 677 P.2d 202 (1984).
¶ 29 The record in this case reflects no legitimate strategic or tactical reason for Sutherby's counsel's failure to move for a severance. The State's argument suggesting a tactical choice presupposes that evidence of the possession of child pornography would have been allowed in any separate trial on the child rape and molestation charges, but, as discussed below, this is a debatable premise. There is no indication of any possible *923 advantage to the defendant in having a joint trial on all charges, given the State's announced intent to use the pornography counts to show Sutherby's predisposition to molest children. Even the trial judge appeared to expect a severance motion because he asked at a pretrial hearing if severance was a possibility. We hold that counsel's failure to move for severance meets the deficiency prong.
¶ 30 Sutherby must also demonstrate prejudice, first by showing that a severance motion would likely have been granted. And second, he must show that, had a severance been granted, there is a reasonable probability that the jury would not have found him guilty of child rape and molestation beyond a reasonable doubt.
¶ 31 Here, the trial judge likely would have granted a severance under the relevant considerations, with the result that the outcome at a separate trial on child rape and molestation charges would likely have been different.
¶ 32 To determine whether to sever charges to avoid prejudice to a defendant, a court considers "(1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial." Russell, 125 Wash.2d at 63, 882 P.2d 747.
¶ 33 First, while Sutherby concedes the State's evidence on the child pornography charges was strong, Brief of Appellant at 20, the evidence proving the child rape and molestation charges was weaker. The evidence consisted of the trial testimony and prior statements of L.K., who was six years old at the time of trial, and medical evidence that was consistent with abuse, but which the medical professionals acknowledged did not alone support the conclusion that sexual abuse occurred.
¶ 34 Second, Sutherby offered separate defenses for the child rape and molestation charges and the possession of child pornography charges. With respect to the child rape and molestation charges, Sutherby claimed his injured finger might have been near L.K.'s vaginal area when he picked her up, but he never poked her, and she might be confusing the incident involving Sutherby with an earlier incident involving her six-year-old uncle. RP (Nov. 3, 2005) at 413. With respect to the possession of child pornography charges, Sutherby maintained he unintentionally acquired the images when downloading adult pornography. The State attacked the credibility of Sutherby's defense to the pornography charges and argued that it called into question the credibility of his defense to the child rape and molestation charges.
¶ 35 Third, though the jury was instructed to decide each count separately,[6] the State consistently argued that the presence of child pornography on Sutherby's computers proved he sexually abused his granddaughter, stating it "shows his motive; why he touched L.K." Id. at 398. The State further argued:
And how do you know that this man has a problem with sex with children and he fantasized about it and this was a present for him? You saw all, not all of it, but you saw a representative sample from the child pornography on that screen. We know he is predisposed to touching children in a sexual manner.
Id. at 397. Additionally, there was no limiting instruction directing the jury that the evidence of one crime could not be used to decide guilt for a separate crime.
¶ 36 Fourth, had the possession of child pornography charges been severed, it is highly likely that evidence of Sutherby's possession of the child pornography would have been excluded in a separate trial for child rape and molestation. The State argues that such evidence is admissible to show the absence of mistake or accident. However, the few cases in which evidence of possession of pornography was allowed in a trial for sexual assault involved pornography evidence that was used to show a sexual desire for the particular victim. See State v. Ray, 116 Wash.2d 531, 547, 806 P.2d 1220 (1991); *924 State v. Ferguson, 100 Wash.2d 131, 133-35, 667 P.2d 68 (1983); State v. Medcalf, 58 Wash.App. 817, 822-23, 795 P.2d 158 (1990).[7] As offered here, the evidence would merely show Sutherby's predisposition toward molesting children and is subject to exclusion under ER 404(b).
¶ 37 ER 404(b) prohibits the use of "other acts" evidence to prove the character of a person in order to show that he acted in conformity with that character. State v. Smith, 106 Wash.2d 772, 775, 725 P.2d 951 (1986). Even evidence that is otherwise relevant can be excluded if it is highly prejudicial. Id. at 776, 725 P.2d 951. We have previously cautioned about the admissibility of other sex crimes, warning that "[c]areful consideration and weighing of both relevance and prejudice is particularly important in sex cases, where the potential for prejudice is at its highest." State v. Coe, 101 Wash.2d 772, 780-81, 684 P.2d 668 (1984). In cases where admissibility is a close call, "`the scale should be tipped in favor of the defendant and exclusion of the evidence.'" Smith, 106 Wash.2d at 776, 725 P.2d 951 (quoting State v. Bennett, 36 Wash.App. 176, 180, 672 P.2d 772 (1983)).
¶ 38 Based on the inflammatory nature of the crimes, we think it likely that the evidence of the child pornography would not have been admissible at a separate trial for child rape and molestation. Neither would the evidence of the child rape and molestation have been admissible at a separate trial for possession of child pornography. A defendant must be tried for the offenses charged, and evidence of unrelated conduct should not be admitted unless it goes to the material issues of motive, intent, absence of accident or mistake, common scheme or plan, or identity. State v. Goebel, 36 Wash.2d 367, 368-69, 218 P.2d 300 (1950).
¶ 39 We hold that Sutherby has demonstrated ineffective assistance of counsel based on his trial attorney's failure to seek severance of the charges. The failure to make a severance motion fell below the objective standard of reasonableness in light of all the circumstances. There is a reasonable probability that the trial court, which had inquired about a possible severance, would have granted the motion, and that the outcome at a separate trial on the child rape and molestation charges would have been different. Accordingly, we reverse Sutherby's convictions for child rape and molestation and remand for retrial.[8]

CONCLUSION
¶ 40 We hold that the proper unit of prosecution for possession of child pornography under former RCW 9.68A.070 is one count per possession, rather than per image or photograph or per minor depicted. We remand for resentencing on a single count of possession of child pornography. We reverse Sutherby's convictions for child rape and child molestation based on ineffective assistance of counsel in failing to seek severance of the charges and remand for further proceedings. Because of our resolution of the case, it is unnecessary to address Sutherby's additional claims. We dismiss Sutherby's personal restraint petition as moot.
WE CONCUR: GERRY L. ALEXANDER, Chief Justice, CHARLES W. JOHNSON, RICHARD B. SANDERS, TOM CHAMBERS and SUSAN OWENS, Justices.
FAIRHURST, J. (concurring in part and dissenting in part).
¶ 41 I agree with the majority on the unit of prosecution issue. I agree with the dissent on the severance issue.
I CONCUR: BARBARA A. MADSEN, Justice.
*925 J.M. JOHNSON, J. (dissent).
¶ 42 Poor little L.K. This innocent young girl was victimized at age five by her own grandfather, and now by a justice system that is supposed to protect her. The majority holds that Randy Sutherby, although convicted after a jury trial, is entitled to a new trial because he and his counsel did not ask to sever other criminal charges. I dissent because the majority finds this violates Sutherby's constitutional rights and remands to force L.K. to an unnecessary second trial.
¶ 43 L.K. is not the only child victimized. The second half of the majority opinion holds that Sutherby's possession of eight different films of sexual violation of different child victims on two separate computers equals just one charge. Because the majority ignores the legislature's express interest in protecting each child victim of filmed sexual abuse, I dissent.
¶ 44 Sutherby's trial for child rape, molestation, and child pornography involved simple questions of fact and credibility, each of which the jury resolved. With respect to the child rape, L.K. testified her grandfather poked her repeatedly in her "pee pee" when she was at his house during the Christmas holiday. Verbatim Report of Proceedings (VRP) (Nov. 1, 2005) at 25. A doctor testified she observed physical evidence consistent with the child's account of digital penetration. Sutherby did not dispute much of what L.K. reported but testified that he had an injured finger that might have "accidentally" been in the area of his granddaughter's privates, but he didn't insert his finger into her vagina. The jury heard all the evidence, including testimony and cross-examination of L.K. and Sutherby, as well as testimony of other family members. The jury unanimously found Sutherby guilty. The case should have ended there as Sutherby received his full constitutional rightsincluding using his own attorney throughout.
¶ 45 However, Sutherby now contends, and the majority holds, that his trial had multiple errors, including his own failure to ask for severance of charges while represented by an attorney of his own choosing. Sutherby's claims for a new trial are meritless, especially considering the strong evidence supporting the jury convictions. "A defendant is entitled to a fair trial but not a perfect one." Lutwak v. United States, 344 U.S. 604, 619-20, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

SEVERANCE
¶ 46 The majority errs in holding Sutherby proves his counsel was deficient and that Sutherby was prejudiced by the alleged deficiency in violation of his constitutional rights. Although correctly citing the two-prong test from Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the majority misapplies both prongs.
¶ 47 Sutherby's counsel was not deficient because enduring one trial for all the charges was likely a strategic choice.[1] Most obviously, Sutherby decided to save money by one trial, rather than two. Sutherby now has the burden of affirmatively showing that the decision was not tactical. But Sutherby's sole argument on deficiency is the bald assertion that there was "no downside" to severance. Br. of Appellant at 18. That is not a persuasive argument. First, he saved both time (under community suspicion) and money by avoiding two trials. Also, several scenarios indicate it would be no advantage to seek severance, even if granted.[2] Sutherby and his counsel knew that the State could likely admit evidence of Sutherby's child pornography at any later separate trial for rape and molestation, especially if Sutherby testified, as he did here.[3]Lex parsimoniae, the logician's *926 "Law of Parsimony," holds that the simplest, most obvious explanation is usually correct.[4] Sutherby and his counsel simply concluded a costly separate trial would be redundant and pointless, as well as expensive. Sutherby paid his selected counsel. Second, Sutherby obviously (if mistakenly) believed he could convince the jury of his innocence and that these charges were all a mistake. Sutherby had one common defense any penetration of his granddaughter was an "accident," and he accidentally downloaded child pornography. Sutherby has not proved that these were not tactical reasons for his decision not to seek severance, even after the issue was raised by the judge. Therefore, he cannot establish that his counsel's performance was constitutionally deficient.
¶ 48 The United States Supreme Court in Strickland warned that it is "all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission ... was unreasonable." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. That is why "every effort be made to... reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.
¶ 49 Sutherby was not represented by an overworked public defender provided at public expense. He hired, at his own expense, a private attorney who made tactical decisions with his client, including not moving for severance. The majority glosses over the fact that there are plausible and even more likely reasons for Sutherby and his counsel's decisions, and the majority is badly skewed by the "distorting effects of hindsight." Id.
¶ 50 Sutherby was also not prejudiced by his counsel's allegedly deficient performance. Under the second prong of Strickland, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694, 104 S.Ct. 2052. The majority presumes, without any rationale, that the outcome of a severed trial would be different. To the contrary, the jury heard strong evidence of Sutherby's guiltmuch stronger than similar cases in which we have upheld the sufficiency of the evidence[5]and Sutherby's defense was unbelievable. L.K. was clear, consistent, and timely in her accounts, which were supported by other witnesses. Her reluctance to be around Sutherby after the rape was observed and recounted by several other family members who testified. Medical evidence from an examining doctor supported the claim of digital penetration, and Sutherby admitted that his finger might have been in the area of L.K.'s vagina while she was naked.
¶ 51 Sutherby's sole defensethat he might have "accidentally" poked the child's vaginais similarly unpersuasive. The jury's verdict reflects its disbelief of Sutherbyand belief that little L.K. told the truth. There is no reason to believe a separate trial would have resulted in a different outcome.[6]
*927 ¶ 52 Furthermore, remanding now for an unnecessary new trial disregards an important principle of our constitution's crime victims' rights amendment. See CONST. art. I, § 35 (amend.84). That amendment stands for the principle that victims ought to be accorded dignity and respect throughout the criminal process. Under the majority's holding, L.K. and her family must now suffer through a second trial on the rape and molestation charges because the majority has an unfounded hunch that Sutherby might have been prejudiced. The majority disregards the spirit, if not the letter, of this important Washington constitutional provision.

UNIT OF PROSECUTION
¶ 53 The majority also errs in concluding Sutherby can be convicted of only one count of possession of child pornography.[7] These images were found on two separate computers containing "lots" (Sutherby's own word) of sexually explicit series of different children, individually titled and downloaded on different days over a period of several years. VRP (Nov. 3, 2005) at 355-56. Sutherby's possession was not an isolated, singular criminal act.
¶ 54 The unit of prosecution is "`a question of statutory interpretation and legislative intent.'" State v. Ose, 156 Wash.2d 140, 144, 124 P.3d 635 (2005) (quoting State v. Adel, 136 Wash.2d 629, 634, 965 P.2d 1072 (1998)). "In determining legislative intent, this court first looks to the statute's plain meaning." Id. The statute here forbids the "knowing[] possess[ion of] visual or printed matter depicting a minor." Former RCW 9.68A.070 (1990) (emphasis added). Printed matter is defined as "any photograph or other material that contains a reproduction of a photograph." RCW 9.68A.011(2). In State v. Root, 141 Wash.2d 701, 710, 9 P.3d 214 (2000), where this court addressed the unit of prosecution for the sexual exploitation of a minor (RCW 9.68A.040), we held, "[t]he statute specifically states `a minor,' so [the defendant] may be charged per child involved." This court approved multiple charges in Root, 141 Wash.2d at 711, 9 P.3d 214. We should hold the same here.
¶ 55 In enacting chapter 9.68A RCW, the legislature declared, "the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance. The care of children is a sacred trust and should not be abused by those who seek commercial gain or personal gratification based on the exploitation of children." RCW 9.68A.001. The majority's ruling "result[s] in a defendant's receiving the same punishment for possessing photographs of one hundred children as for possessing only one...." State v. Reeves, 144 Wash.App. 422, 428, 182 P.3d 491 (2008) (disapproving of the Court of Appeals' reasoning in this case and holding the rule of lenity did not apply).[8]
¶ 56 The majority's holding undermines the legislature's purpose in suppressing the production and trade of child pornography. The multibillion dollar child pornography industry,[9] like any market, is driven by demand. Sutherby, as a consumer of numerous sexually explicit downloads, contributed significantly to this demand, more than a consumer who downloads a single image. But under the majority's holding, once a person has downloaded one pornographic image, every additional image brings no risk of additional punishment. Child pornography offenders should not be entitled to a "volume *928 discount." Commonwealth v. Davidson, 595 Pa. 1, 938 A.2d 198, 221 (2007).
¶ 57 Sutherby's possession harmed at least seven different child victims whose images were recorded and stored on his computers, and he should be punished accordingly. The majority's analysis undermines the legislature's purpose and fails to adequately protect innocent child victims. Hopefully the legislature will act to correct this misreading of the statute.

CONCLUSION
¶ 58 Sutherby received a fair trial and was properly convicted by a unanimous jury of sexually abusing his granddaughter and of seven counts of possession of child pornography. The majority's ruling fails to adequately protect innocent child victims and misapplies the test set by the United States Supreme Court to determine truly constitutionally ineffective assistance of counsel. Therefore, I dissent.
¶ 59 And what about L.K.? She did everything a little girl in her situation should have done. She told her mother what her grandfather had done. She gave the same account to two doctors and to a child interviewer. She recounted the incident at a competency hearing, and she honestly described the events again to the jury. She knows the number one rule of the court is "[n]ever lie." VRP (Nov. 1, 2005) at 59. And she did not lie; indeed, the juryour system's lie detector properly made that determination. But now, several years later, the majority's decision means she will have to relive these traumatic events at another trial (or see her victimizer plead down to a reduced sentence). It would be possible to explain to L.K. why she has to go through such a horrible experience if the constitution required that result, but it does not. I dissent. Poor little L.K.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
[3] The State moved to strike the declaration of attorney Todd Maybrown, filed in support of Sutherby's PRP. Because we resolve this case on direct appeal and do not reach the PRP, the State's motion is denied as moot.
[4] While there is some appeal to emphasizing the victimization of children, former RCW 9.68A.070 is not clearly and unambiguously written to identify the subjects of the prohibited material as the unit of prosecution. There is no doubt the legislature was concerned about the abuse and exploitation of children when it enacted chapter 9.68A RCW. See former RCW 9.68A.001 (1984). However, the purpose statement provides no information about the level at which the legislature intended to set penalties for the specific crime of possession of matter depicting a minor engaged in sexually explicit conduct. See United States v. Reedy, 304 F.3d 358, 367 n. 12 (5th Cir.2002) (noting the statute's purpose provides no information about the level at which it sets penalties). Further, using each child victim to define the unit of prosecution appears inconsistent with former RCW 9.68A.110(5) (1992), which provided that "[i]n a prosecution under RCW 9.68A.070, the state is not required to establish the identity of the alleged victim."
[5] Two Court of Appeals opinions are at odds with our conclusion. In State v. Gailus, the Court of Appeals held that the proper unit of prosecution for possession of child pornography was each separate digital file even though the files were stored on one compact disc. 136 Wash.App. 191, 199, 147 P.3d 1300 (2006). Similarly, in State v. Reeves, the Court of Appeals concluded that the defendant could be charged for each photograph depicting a minor engaged in sexual conduct contained in the same notebook. 144 Wash.App. 422, 424, 182 P.3d 491 (2008). To the extent that Gailus and Reeves conflict with our interpretation of former RCW 9.68A.070, we disapprove those decisions.
[6] Jury instruction 3 stated: "A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." Clerk's Papers at 65.
[7] The State also relies on State v. Bouchard, 31 Wash.App. 381, 386, 639 P.2d 761 (1982), which found no abuse of discretion in the trial court's admission of evidence of the defendant's prior sexual abuse of his son to rebut a claim of accident in a prosecution for the abuse of his granddaughter. Bouchard predates our decisions in Ferguson and Ray and appears inconsistent with our analysis; accordingly, it should no longer be regarded as authoritative on this issue.
[8] Sutherby acknowledges that he cannot demonstrate prejudice with respect to the child pornography charges and does not seek reversal of those charges based on ineffective assistance of counsel. Br. of Appellant at 20; Reply Br. of Appellant at 25.
[1] See State v. Lord, 117 Wash.2d 829, 883, 822 P.2d 177 (1991) ("If defense counsel's trial conduct can be characterized as legitimate trial strategy or tactics, then it cannot serve as a basis for a claim that the defendant did not receive effective assistance of counsel.").
[2] The majority limits its consideration of this prong to reasons expressed in the record. Majority at 922 ("The record ... reflects no legitimate strategic or tactical reason for ... failure to move for a severance."). Neither Strickland nor our cases mandate such a limitation.
[3] The majority opines it is "highly likely" that evidence of Sutherby's child pornography would not be admissible in a separate trial. Majority at 924. But none of the cases the majority cites deal with the ER 404(b) exception relevant here, the defense of accident. These cases merely stand for the proposition that showing lustful disposition is one proper purpose for admitting ER 404(b) evidence. See, e.g., State v. Medcalf, 58 Wash.App. 817, 823, 795 P.2d 158 (1990) (noting evidence of other bad acts is admissible to show lustful disposition, and for other purposes). The majority assumes that, because our prior cases involving evidence of possession of child pornography have only dealt with the lustful disposition exception to ER 404(b), ipso facto other ER 404(b) exceptions do not apply to such evidence. This ignores the plain language of ER 404(b) and has no support in our case law. It is also inconsistent with child sexual assault cases where we have explicitly approved admission of ER 404(b) evidence for other purposes. See, e.g., State v. DeVincentis, 150 Wash.2d 11, 17-23, 74 P.3d 119 (2003) (common scheme or plan); State v. Kilgore, 147 Wash.2d 288, 295, 53 P.3d 974 (2002) (motive and opportunity); State v. Elmore, 139 Wash.2d 250, 286, 985 P.2d 289 (1999) (res gestae).
[4] In its more complete form it is often called "Ockham's Razor" and attributed to a 14th century logician, William of Ockham. J.S. v. Shoreline School Dist., 220 F.Supp.2d 1175, 1186 (W.D.Wash.2002).
[5] See, e.g., State v. Tilton, 149 Wash.2d 775, 787, 72 P.3d 735 (2003) (victim's timely report and testimony about the event sufficient); State v. Whitney, 108 Wash.2d 506, 739 P.2d 1150 (1987) (victim's timely report and identification of the perpetrator sufficient).
[6] Cf. State v. Warren, 55 Wash.App. 645, 655, 779 P.2d 1159 (1989) (holding that failure to move to sever charges of attempted rape against different victims was not prejudicial when both victims testified, gave concise accounts of the defendant's conduct, and were subject to cross examination, the defendant testified, and the jury had a full opportunity to assess the demeanor and credibility of all the parties).
[7] At sentencing, the trial judge reduced Sutherby's convictions from 10 to 7. The judge combined the counts for images depicting the same minor.
[8] A significant majority of other jurisdictions have also rejected the one-count-fits-all approach and have found a separate count is warranted for each minor depicted in the images possessed, or even for each image possessed. See Commonwealth v. Davidson, 595 Pa. 1, 938 A.2d 198, 219-20 (2007) (surveying unit of prosecution for possession of child pornography in various jurisdictions).
[9] "[C]hild pornography has become a multi-billion dollar commercial enterprise, and is among the fastest growing businesses on the Internet." Press Release, Nat'l Ctr. for Missing & Exploited Children, Child Porn Among Fastest Growing Internet Businesses (Aug. 18, 2005), available at http://www.ncmec.org/missingkids/servlet/News EventServlet?Language Country=en_US & PageId=2064