# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47610-0-II |
| Respondent, | |
| v. | |
| AUDRA MICHELLE MINIER, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J.  —  Audra M. Minier appeals her convictions for third degree assault and third degree theft following a bench trial.  She argues that the trial court erred in denying her motion to dismiss after a police witness was observed talking to three state witnesses.  She also argues that defense counsel provided ineffective assistance because he failed to move to exclude witnesses under ER 615 before this alleged misconduct occurred.  In a statement of additional grounds for review[1] (SAG), Minier further contends that she received ineffective assistance of counsel on several additional grounds.[2]

---

[1] RAP 10.10.

[2] Minier also assigns error to several of the bench trial findings of fact and conclusions of law, but she presents no argument related to these assignments of error.  Accordingly, we do not address these assignments of error.

Because the trial court found that no prejudice had occurred and the record supports that finding, we hold that (1) the trial court did not err when it denied Minier's motion to dismiss and did not impose any lesser sanction, and (2) Minier cannot establish ineffective assistance based on her counsel's failure to move to exclude witnesses. We further hold that Minier's ineffective assistance of counsel assertions in her SAG either have no merit or are outside the record and cannot be addressed. Thus, we affirm.

FACTS

I. BACKGROUND

On January 21, 2014, while at a local craft store, Minier placed several items in a shopping cart, concealed some of the items with her coat, placed other items in or under a bag she had brought into the store, and left the store without paying for this merchandise. When the store's security officer, Sherilyn Eaton, confronted Minier in the parking lot, Minier was uncooperative, belligerent, and aggressive. When Eaton attempted to physically detain her, Minier resisted and the two women fell to the ground. At some point during this physical altercation, Minier bit Eaton's arm causing it to bleed.

Several witnesses, including store employee Abby Crawford and two women, Cassidy Lucas and Jennifer Hill, who were shopping in the area, observed the incident. Vancouver Police Officer Ronald Stevens responded to the incident, interviewed witnesses, and took photographs of Eaton's bite injury.

The State charged Minier with third degree assault and third degree theft. Minier pleaded not guilty and waived her right to a jury trial.

## II. BENCH TRIAL

Stevens, Crawford, Eaton, Lucas, and Hill testified for the State. They testified consistent with the above facts.

Minier was the only defense witness. She asserted that (1) she believed she had taken all of the merchandise out of her cart before leaving the store, (2) she was not resisting Eaton but rather just attempting to leave because Eaton had no authority to stop her, and (3) she did not bite Eaton and Eaton's injury was from her arm striking Minier's mouth as they fell.

During the course of the trial, several witnesses and the trial court viewed a short, approximately 30-second video that Minier had taken of the incident on her cellular telephone. Apparently because of technical issues, each viewer watched the video on a tablet rather than the trial court's audio visual equipment.

After Stevens and Crawford had testified, defense counsel advised the trial court that Minier's fiancé, James Henline, had been in the hallway and had "overheard" Stevens, who had already testified, "discussing particulars of the event that day" with other witnesses.[3] Report of Proceedings (RP) (April 27, 2015) at 65. Defense counsel asked that the trial court bring in the witnesses and request that they refrain from discussing the case until they have testified. He then moved for a mistrial "based on witness coercion." RP (April 27, 2015) at 65.

The trial court brought in the witnesses, including Stevens, from the hallway and told them about the defense's concern. Under oath, Stevens and three other unidentified witnesses swore that they had not discussed this case.

---

[3] Defense counsel did not identify who these witnesses were. But Henline's testimony during the offer of proof suggests it was three of the four other state witnesses.

Defense counsel then asked the trial court to allow an offer of proof from Henline. Henline testified that when he left the courtroom, he overheard the officer and three female witnesses discussing this case. He stated that he heard the officer "speaking about locations in the parking lot, where people were," and, later, "a statement to the effect of bite and another statement of a parking lot." RP (April 27, 2015) at 69. Defense counsel then moved for dismissal with prejudice, arguing that Stevens's discussion of the case with other witnesses was "highly prejudicial" to Minier.[4] RP (April 27, 2015) at 70.

The trial court denied the motion to dismiss. It then commented,

> I don't believe there's an adequate showing of prejudice that would be involved here, not only from the testimony that was provided -- I don't believe there's an adequate basis for that. But also, there wasn't a request from the parties to even exclude witnesses from the courtroom prior to starting the trial necessarily either.
> The witnesses have been outside, but there wouldn't necessarily be a basis for precluding them from even hearing the testimony that's been [presented] today, unless you have a different position on that, [defense counsel], than what I'm aware of.

RP (April 27, 2015) at 71. Defense counsel did not object to this ruling, but he requested that the trial court instruct the witnesses be excluded. The trial court granted defense counsel's request and excluded the witnesses from the courtroom from that point forward. After this ruling, Eaton, Lucas, and Hill testified for the State.

The trial court found Minier guilty of third degree theft and third degree assault. Minier appeals her convictions.

---

[4] Defense counsel did not request any lesser sanction, such as exclusion of any witnesses.

ANALYSIS

I. DENIAL OF MOTION TO DISMISS

Minier first argues that the trial court erred when it denied her motion to dismiss based on governmental misconduct.[5] Because Minier fails to establish that Stevens's contact with the other witnesses was prejudicial, these arguments fail.

Although Minier does not expressly state that she was entitled to dismissal based on governmental misconduct under CrR 8.3(b), defense counsel's motion to dismiss was apparently under CrR 8.3(b), and so we will consider this issue under that rule. We review a trial court's denial of a motion to dismiss under CrR 8.3(b) for a manifest abuse of discretion. *State v. Everybodytalksabout*, 145 Wn.2d 456, 478, 39 P.3d 294 (2002). The trial court abuses its discretion if the decision is manifestly unreasonable or is based on untenable grounds. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003).

CrR 8.3(b) provides that the trial court "may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial." To support dismissal under CrR 8.3(b), the defendant must show by a preponderance of the evidence both (1) arbitrary action or governmental misconduct and (2) actual prejudice affecting the defendant's right to a fair trial.

---

[5] She also suggests that if dismissal was not appropriate, the trial court should have imposed a lesser sanction as described in *State v. Skuza*, 156 Wn. App. 886, 235 P.3d 842 (2010). But *Skuza* is inapplicable here because it addresses a violation of an exclusion order and there was no exclusion order here. 156 Wn. App. at 896. To the extent Minier may be suggesting that the trial court could have imposed a lesser sanction under CrR 8.3(b), she does not support this assertion with any argument or citation to authority. Thus, we decline to consider whether the trial court should have considered a lesser sanction under CrR 8.3(b).

*Rohrich*, 149 Wn.2d at 654. Dismissal under CrR 8.3(b) is an extraordinary remedy. *State v. Wilson*, 149 Wn.2d 1, 9, 65 P.3d 657 (2003).

Minier argues that Officer Stevens engaged in misconduct by talking to the other witnesses about the case while being aware that it was unacceptable to discuss testimony with the other witnesses. Even presuming misconduct, Minier fails to establish that the trial court abused its discretion when it found no prejudice.

Minier argues that "the prejudice is evident by virtue of the alleged contact with witnesses itself." Br. of Appellant at 12. But Minier cites no authority stating that the trial court had to presume prejudice merely because Officer Stevens had contact with the witnesses. CrR 8.3(b) requires Minier to show that prejudice affected her right to a fair trial. *Rohrich*, 149 Wn.2d at 654. The record provides only vague references to what Officer Stevens potentially said to the witnesses—Henline testified that he only heard the officer "speaking about locations in the parking lot, where people were" and, later, "a statement to the effect of bite and another statement of a parking lot." RP (April 27, 2015) at 69. Minier does not, however, explain how Officer Stevens's statements potentially influenced the remaining witnesses' testimonies. Nor is Henline's vague testimony sufficient to establish that these statements could have potentially influenced the witnesses.

Furthermore, if Officer Stevens's statements to the witnesses influenced their testimonies, Minier had the opportunity to impeach the witnesses with their prior statements to law enforcement and/or written reports, so any risk of prejudice was remote. Based on the information presented to the trial court and the fact Minier could have impeached these witnesses' trial testimony, the

trial court did not abuse its discretion when it found there was no prejudice and denied Minier's motion to dismiss.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

### A. LEGAL PRINCIPLES

Minier next raises several ineffective assistance of counsel claims. The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). In order to show that she received ineffective assistance of counsel, a defendant must show that (1) defense counsel's conduct was deficient and (2) the deficient performance was prejudicial. *Grier*, 171 Wn.2d at 32 (quoting *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)).

"The threshold for the deficient performance prong is high, given the deference afforded to decisions of defense counsel in the course of representation." *Grier*, 171 Wn.2d at 33. "'When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Grier*, 171 Wn.2d at 33 (quoting *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009)). We review ineffective assistance claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

### B. FAILURE TO REQUEST ER 615 INSTRUCTION

Minier argues that defense counsel provided ineffective assistance because he failed to move to exclude witnesses under ER 615. We disagree.

ER 615 provides, "At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses." "The intent of ER 615 is 'to discourage or

7

expose inconsistencies, fabrication, or collusion.'" *State v. Skuza*, 156 Wn. App. 886, 896, 235 P.3d 842 (2010) (quoting KARL B. TEGLAND, 5A WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 615.2, at 623 (5th ed. 2007)). Conversation between excluded witnesses that promote fabrication or collusion may violate an ER 615 order. *Skuza*, 156 Wn. App. at 897. But a conversation that does not contravene this intent does not violate an ER 615 order. *See Skuza*, 156 Wn. App. at 897.

Even if defense counsel should have requested an ER 615 instruction, Minier cannot establish prejudice on this record. As discussed above, Minier has failed to show that the contact here influenced testimony or promoted fabrication or collusion. Thus, this argument fails.

## C. SAG ISSUES

In her SAG, Minier presents several additional ineffective assistance of counsel claims. These claims either fail or relate to matters outside the record that we cannot consider.

### 1. DEFENSE CLOSING ARGUMENT

Minier appears to assert that defense counsel failed to address certain issues in her closing argument. First, she contends that defense counsel failed to "not[e]" that certain aspects of Eaton's surveillance and confrontation of Minier, specifically Eaton's failure to keep Minier under constant

surveillance[6] and Eaton's engaging in a physical confrontation with Minier,[7] were not consistent with store policy or procedures. SAG at 1. She then contends that defense counsel failed to "not[e]" a variety of what she considers to be contradictory evidence.[8] SAG at 2.

Defense counsel's closing argument focused on Minier's assertion that she was unaware that the merchandise was still in her shopping cart and that she was only reacting to Eaton's

---

[6] Eaton testified that "four elements" had to exist before she could call an incident a shoplifting. RP (April 27, 2015) at 74. She had to (1) either watch the subject take the item from the shelf or otherwise know it is a store product, (2) keep the subject under constant surveillance, (3) look for concealments, and (4) allow the subject time to buy the item before they leave the store. While watching Minier in the store, Eaton was unable to see Minier when she moved to a different section of the store.

[7] Eaton testified that the store's policy allowed her to apply force only if the suspect started to fight or push back; in which case, she had the right to get the suspect under control and take them inside the store.

[8] Specifically, Minier asserts that defense counsel failed to point out the following allegedly contradictory evidence: (1) Eaton's testimony that she could see the plastic organizers in Minier's cart even though Eaton had first testified that Minier had attempted to conceal these items, (2) Eaton's testimony that she did not contact Minier until after Crawford was present compared to Crawford's testimony that Eaton was with Minier in the parking lot when Crawford arrived, (3) Eaton's testimony that Minier threw a quilt kit and some fabric at her when other evidence shows that these items were discovered in a duffle bag after Minier was restrained, (4) Eaton's testimony that she had handcuffed Minier's right wrist and that Minier was preventing her from putting the other handcuff on by flailing around with her right arm when the video allegedly showed no handcuff on Minier's right wrist, (5) Eaton's testimony that she wrapped her arm around Minier's chest when the video allegedly showed that Eaton put her arm around Minier's neck, and (6) Eaton's testimony that Minier bit her arm when the video allegedly showed Minier "grimacing with her teeth closed" and trying to remove Eaton's arm from around her (Minier's) throat. SAG at 2.

We note that Minier overstates what the video showed. First, it shows Eaton was restraining Minier by holding her across her upper chest, not her neck. Second, although there is one brief shot of Minier's apparently grimacing mouth, the video then shows just a blur of undefined activity during which there would have been ample time for Minier to bite Eaton. And third, at no point does the video show a view of Minier's right arm sufficient to see whether there was or was not a handcuff on that arm.

unjustified or unlawful attempts to take her (Minier) into custody and did not bite Eaton. Eaton's alleged failure to follow store policy or procedure and the possible inconsistent testimony and evidence Minier describes were not highly relevant to these arguments. Thus, even assuming that Minier has correctly characterized the evidence, it would have been a reasonable tactical decision not to discuss these facts in closing argument. Furthermore, Minier presented evidence about these facts and the trial court, which was the fact finder in this case, was aware of these facts when it considered the evidence, so Minier does not show how defense counsel's failure to further discuss these issues would have been prejudicial. Thus, Minier does not establish ineffective assistance of counsel on this ground.

Second, Minier contends that defense counsel was ineffective for failing to argue that the effort it would have taken for her to retrieve her phone and start recording was inconsistent with her having been flailing her arms around and struggling with Eaton. But any facts related to what it would have taken for Minier to access her phone and start recording is outside this record, so we do not consider this claim further. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Third, Minier contends that counsel failed to note that the video showed that she was speaking calmly, requesting to be released, and was not combative and that Eaton was the aggressor. Although the video does not initially show that Minier was combative, it is a short video showing only a portion of her interactions with Eaton. At the start of the video, Minier was already being physically restrained by Eaton, so it was not relevant to whether Minier was being combative before this point. And the video is in tight focus and does not show which of the two

10

women started the struggle that culminated with the two women falling to the ground. Again, given the focus of defense counsel's closing argument, the relatively low evidentiary value of the video, and the fact the trial court had this evidence before it, this appears to have been a reasonable tactical decision that was not prejudicial.

2.      PHOTOGRAPHIC EVIDENCE

Minier also appears to assert that she received ineffective assistance of counsel because defense counsel failed to object to the trial court and State reviewing images of the bite mark and viewing the scar when defense counsel had never seen this evidence.[9] Whether defense counsel had seen this evidence is outside the record. Accordingly, we decline to address this claim. *McFarland*, 127 Wn.2d at 335.

3.      VIDEO EVIDENCE

Minier next contends that defense counsel provided ineffective assistance of counsel by failing to ensure that the images and video that Henline had prepared for the trial were compatible with the trial court's media systems. She seems to assert that defense counsel should not have relied on Henline to prepare the exhibits and that because the court and witnesses were able to watch the video only on a small screen, they were unable to watch the video on a television or larger monitor.

---

[9] During Stevens's testimony, the State moved to admit two photographs of Eaton's injury. When the State gave the photographs to Stevens, it asked him to hold them up so defense counsel could see what exhibits he was examining. The trial court admitted these photographs; defense counsel did not object.

11

Whether defense counsel obtained the video or other documentation from Henline or consulted with Henline about the proper format for these exhibits is outside the record. Thus, we decline to further address whether defense counsel should have obtained the evidence in some other way. *McFarland*, 127 Wn.2d at 335.

Concerning whether defense counsel should have ensured that the witnesses and trial court could have viewed the video on a larger screen, the record shows they viewed the video on a tablet. Based on a review of this video, it does not appear that they would have seen anything more clearly if they had been able to view in a larger format. And regarding whether the witnesses or the trial court should have been able to pause the video, there is nothing in the record suggesting that any witness or the trial court expressed any desire to do so. Thus, Minier has not established any prejudice.

4.      MISIDENTIFICATION OF MINIER'S ROOMMATE

Finally, Minier argues that defense counsel provided ineffective assistance by failing to "point[ ] out" that the name of her roommate was incorrect in some of the documentation. SAG at 3. Although the record shows that defense counsel once referred to Minier's roommate by an incorrect name, there is nothing in the record showing that defense counsel obtained this information from any documentation or whether he just misspoke. Accordingly, Minier does not establish ineffective assistance on this ground.

No. 47610-0-II

Because the trial court did not err in denying Minier's motion to dismiss and not imposing lesser sanctions and Minier fails to establish ineffective assistance of counsel, we affirm Minier's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

BJORGEN, C.J.

MAXA, J.